UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| PATRICK URBAIN POTTIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 3:18-01378-WGY |
| HOTEL PLAZA LAS DELICIAS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

YOUNG, D.J.[1]                                              May 16, 2019

### AMENDED MEMORANDUM & ORDER

#### I. INTRODUCTION

This action arises out of the destruction and reproduction of a site-specific mural created by plaintiff Patrick Urbain Pottier ("Urbain") at a hotel the defendant Hotel Plaza Las Delicias, Inc. ("the Hotel") owns. The Hotel covered the mural with wallpaper (destroying it), printed a copy onto wallpaper, and displayed it in another area of the Hotel. Urbain sues the Hotel for copyright infringement under the federal Copyright Act, 17 U.S.C. §§ 106 et seq., and the Puerto Rico Authors' Moral Rights Act ("the PRMRA"), P.R. Laws Ann. tit. 31, §§ 1401i-1401ff. The Hotel moves to dismiss the action because: (1) Urbain has not pleaded damages sufficiently under the

---

[1] Of the District of Massachusetts, sitting by designation.

federal Copyright Act, (2) the PRMRA does not protect Urbain's site-specific mural, and (3) the Copyright Act preempts the PRMRA. At the March 27, 2019 hearing on the motion, this Court denied the motion to dismiss as to the Copyright Act claim and took the motion under advisement as to the PRMRA claim.

### A. Factual Background[2]

Urbain is an artist. Am. Compl. ¶¶ 13-14. In early 2013, the Hotel commissioned Urbain to paint a mural in its "VIVA Bar" located at the Ponce Plaza Hotel and Casino in Ponce, Puerto Rico. Id. ¶ 16.

In April 2013, Urbain completed the wall mural entitled "Espejismo Nocturno" ("the Mural"). Id. ¶ 21. The Mural was "designed specifically taking into consideration the structure and architecture of that specific room in the 'VIVA Bar' owned by the [Hotel]." Id. ¶ 22. The Mural became a "known attraction" and a "fundamental part [of VIVA Bar] to appeal to customers and tourists who enjoyed contemplating this impressive work of art." Id. ¶¶ 27, 30.

In 2016, the Hotel changed the location of "VIVA Bar." Id. ¶ 31. As a result, the Hotel "entirely covered [the Mural] with wallpaper mutilating it and destroying it completely to the

---

[2] The well-pleaded facts from the Amended Complaint are taken as true only for purposes of this motion. Am. Compl., ECF No. 30.

[2]

point where it cannot be restored to its original state." Id. ¶ 32. Before the Hotel destroyed the Mural, the Hotel copied it onto wallpaper (which Urbain describes as a "cheap and apocryphal reproduction") and placed it in the new "VIVA Bar" location. Id. ¶ 33. The Hotel neither notified Urbain nor sought his consent to destroy or reproduce the Mural. Id. ¶¶ 35-36.

### B. Procedural History

Urbain filed an amended complaint in response to the Hotel's original motion to dismiss. Am. Compl.; see Mot. Dismiss Pursuant Fed. R. Civ. P. 12(b)(6), ECF No. 25. The Hotel then filed and briefed a motion to dismiss the amended complaint. Mot. Dismiss Am. Compl. Pursuant Fed. R. Civ. P. 12(b)(6) ("Mot. Dismiss"), ECF No. 35. Urbain filed an opposition. Opp'n Mot. Dismiss Am. Compl. ("Opp'n Mot."), ECF No. 38. The Hotel filed a reply memorandum and Urbain filed a sur-reply. Reply Opp'n Mot. Dismiss Am. Compl. ("Reply Opp'n"), ECF No. 48; Sur-reply Def.'s Reply Opp'n Mot. Dismiss Am. Compl. ("Sur-reply"), ECF No. 53. The Sur-reply raised a request to certify a question to the Supreme Court of Puerto Rico. Sur-reply 3-4, 10. The Hotel moved to strike the request for certification, which Urbain opposed. Mot. Strike Pl.'s Request Certification Puerto Rico Supreme Ct. & Opp'n Certification Request, ECF No. 54; Pl.'s Resp. Def.'s Mot. Strike, ECF No. 55.

The Court denied the motion to strike and ordered the certification issue be taken up at the hearing on the motion to dismiss. February 26, 2019 Order, ECF No. 59.

During a hearing on March 27, 2019, this Court denied the motion to dismiss as to the copyright claim, ruling that the Amended Complaint sufficiently pleaded a violation of the Copyright Act. See March 27, 2019 Min. Order, ECF No. 65. With respect to Urbain's PRMRA claim, the Court denied as premature Urbain's request to certify questions to the Puerto Rico Supreme Court. The Court inquired whether the parties wished to proceed with the PRMRA claims in the courts of the Commonwealth of Puerto Rico, or would rather have this Court decide that claim. The parties indicated that they wished to proceed with all of the claims in this Court. The Court heard argument on the motion to dismiss the PRMRA claims and took the remainder of the motion under advisement. Id.

What remains for the Court to determine is whether, accepting the well-pleaded factual allegations as true and drawing all reasonable inferences in Urbain's favor, the Amended Complaint states a claim upon which relief can be granted under the PRMRA. See Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012); Fed. R. Civ. P. 12(b)(6). The Hotel moves to dismiss this claim on the grounds that: (1) the Mural is a "site-specific work," which is not covered under the PRMRA,

[4]

and (2) even if the PRMRA applies, federal law preempts it.[3] As set forth in more detail below, the Court rules that the PRMRA does not apply to site-specific works such as the Mural. Because the PRMRA does not apply to the Mural, the Court need not, and does not, determine whether the PRMRA is preempted by federal law.

**II. Analysis**

"[T]he Visual Artists Rights Act, 17 U.S.C. § 106A, [("VARA")] was an amendment to the Copyright Act that protects the 'moral rights' of certain visual artists in the works they create, consistent with Article 6*bis* of the Berne Convention." Massachusetts Museum of Contemporary Art Found., Inc. v. Büchel, 593 F.3d 38, 47 (1st Cir. 2010). "Beyond the Copyright Act's protections of certain economic rights, VARA provides additional and independent protections to authors of works of visual art." Id. at 48. Under VARA,

> [m]oral rights are "rights of a spiritual, non-economic and personal nature that exist independently of an artist's copyright in his or her work and spring from a belief that an artist in the process of creation injects his spirit into the work and that the artist's personality,

---

[3] The Hotel also moved to dismiss claims for statutory damages to the extent that Urbain sought statutory damages under the Copyright Act. Mot. Dismiss 17. In response, Urbain represented in his opposition that he is seeking statutory damages under the PRMRA, and not the Copyright Act. Opp'n Mot. 17. This argument is therefore moot and not addressed further.

[5]

as well as the integrity of the work, should
therefore be protected and preserved."[4]

Rivera v. Mendez & Co., 824 F. Supp. 2d 265, 267 (D.P.R. 2011) (Gelpí, J.) (quoting Mass. Museum of Contemporary Art Found., Inc., 593 F.3d at 49)(internal quotations omitted). "The rubric of moral rights encompasses many varieties of rights, but the two most widely recognized are attribution and integrity." Mass. Museum of Contemporary Art Found., Inc., 593 F.3d at 47-48 (citation and quotations omitted). "[T]he right of attribution

---

[4] VARA provides that the author of a work of visual art:

(1) shall have the right—
    (A) to claim authorship of that work, and
    (B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create;

(2) shall have the right to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation; and

(3) subject to the limitations set forth in section 113(d), shall have the right—
    (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
    (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

17 U.S.C. § 106A(a).

protects the author's right to be identified as the author of his work and also protects against the use of his name in connection with works created by others." Id. "The right of integrity allows the author to prevent any deforming or mutilating changes to his work." Id. (citation and quotation omitted).

Although there are express statutory exceptions to qualifying "works of visual art," the First Circuit has grafted on an implicit exception for "site-specific" works. Phillips v. Pembroke Real Estate, Inc., 459 F.3d 128, 143 (1st Cir. 2006) ("[T]he plain language of VARA does not protect site-specific art. If such protection is necessary, Congress should do the job."). Here the parties agree that the Mural is a site-specific work of art. Am. Compl. ¶¶ 19, 22 and 44; Mot. Dismiss 11 ("It cannot be gainsaid that Plaintiff's work is site-specific."); Opp'n Mot. 10 ("There is no dispute in terms that [the Mural] . . . is a site-specific work of art."). Therefore, VARA does not apply to the Mural.[5]

The PRMRA, similar to VARA, recognizes an author's moral rights to works of art "which exist by virtue of the very personal relationship between an author and his work." P.R.

---

[5] Urbain amended his complaint to, among other things, remove the VARA claim after the Hotel moved to dismiss the original complaint.

[7]

Laws Ann. tit. 31, § 1401j(b). Under the PRMRA, moral rights "arise at the time the work is fixed by the author on a tangible medium of expression." Id. The PRMRA defines a "work" of art more broadly than the VARA as an "[o]riginal literary, musical, visual (plastic or graphic), dramatic or performing, artistic, or any other type of creation produced through intelligence and creative in nature, expressed in a tangible medium that is currently known or which may be invented in the future." P.R. Laws Ann. tit. 31, §1401j(d). The PRMRA establishes the following four "moral rights" in such works:

> (1) Attribution. The right to be recognized as the author, whenever that is the case, as well as to prevent the attribution thereto of works that are not his. It includes the right to determine whether the work shall be published under his name, under a pseudonym or sign, or anonymously.
>
> (2) Withdrawal. The right to waive authorship whenever the work no longer conforms to his intellectual or moral convictions.
>
> (3) Integrity.
>
> (A) To prevent the mutilation, deformation, or alteration of the work so that it undermines the legitimate interests or reputation of the author.
>
> (B) To prevent the public presentation or distribution of a mutilated, deformed, or altered work that can undermine the legitimate interests or reputation of the author; and,
>
> (C) To prevent the intentional or negligent destruction of the original or a sole copy of a work.
>
> (4) Access. The right to demand reasonable access to the original or sole copy of a work whenever it is in

> the hands of another, so as to be able to exercise copyright. This right does not entail the movement of a work and access thereto shall be in such a way that causes the least inconvenience to its owner, who shall be compensated in his case for any expenses caused by exercising this right.

P.R. Laws Ann. tit. 31, § 1401j(b).

"Statutory construction in Puerto Rico begins with the text of the underlying statute, and ends there as well if the text is unambiguous." Oquendo-Lorenzo v. Hospital San Antonio, Inc., 256 F. Supp. 3d 103, 107 (D.P.R. 2017) (McGiverin, M.J.) (quoting Scotia Bank De P.R. v. Burgos (In re Plaza Resort at Palmas, Inc.), 741 F.3d 269, 274-75 (1st Cir. 2014)). "After all, the Puerto Rico Civil Code provides that '[w]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof.'" Id. at 107 (quoting P.R. Laws Ann. tit. 31, § 14) (alteration in original). "When the plain language of a statute does not settle the interpretive query at issue, or when seeking additional indicia of the Legislature's intent," the Court may rely on the Legislature's statement of motives. Id.

The Hotel argues that, like VARA, the PRMRA does not apply to site-specific art. Mot. Dism. 11. It argues that, like VARA, the PRMRA does not mention "site-specific" works. Id. at 12. The Hotel relies on the reasoning of Phillips. Id. at 13. In Phillips, an artist brought an action against Pembroke Real

Estate, Inc. to prevent the removal of certain works from a park. Phillips, 459 F.3d at 129. The district court initially issued a preliminary injunction, Phillips v. Pembroke Real Estate, Inc., 288 F. Supp. 2d 89, 105 (D. Mass. 2003) (Saris, J.), and also certified to the Supreme Judicial Court of Massachusetts the following question: "to what extent does the Massachusetts Art Preservation Act, Mass. Gen. Laws ch. 231, § 85S [("MAPA")], protect the placement of 'site specific' art?" Phillips v. Pembroke Real Estate, Inc., 443 Mass. 110, 111 (2004). The Supreme Judicial Court answered the certified question:

> MAPA does not protect the placement of the type of site-specific art at issue here. Although it prohibits the physical destruction of the crafted components of such art, MAPA does not protect it against the conceptual destruction or decontextualization that may result from the removal of those components from the physical environment in which they have been placed. If the crafted components of site-specific art can be extracted from their surroundings without physical damage to them, the statute is not violated by their removal.

Id. at 112. The holding acknowledges statutory property owners' rights in cases where the art cannot be removed without its destruction:

> It is apparent that in drafting the statute, the Legislature was concerned not only with creating new rights for artists, but also with protecting the rights of property owners who commission artworks that become attached to real property. This concern manifests itself in the way § 85S(h) of MAPA addresses "fine art" attached to buildings. If the art can be

> removed from the building without causing "substantial harm" to the art, the building owner may remove the art after giving the artist notice and ninety days to reclaim and remove it himself (at his own expense). G.L. c. 231, § 85S(h)(2). If the artwork cannot be removed from the building without causing the "substantial physical defacement, mutilation, alteration, or destruction" of the art, the owner may proceed to remove it unless the artist has expressly reserved his rights under the statute "by an instrument in writing signed by the owner of such building and properly recorded, <u>prior</u> to the installation of such art" (emphasis added). G.L. c. 231, § 85S(h)(1).

<u>Phillips</u>, 443 Mass. at 117. MAPA is, of course, a different statutory structure than the PRMRA, as the PRMRA has no provisions governing destruction of works attached to buildings. Notably, VARA does address removal of works incorporated into buildings. 17 U.S.C. § 113(d).

After receiving the Supreme Judicial Court's answer to its certified question, the district court vacated the preliminary injunction, entered judgment, and the plaintiff appealed. <u>Phillips</u>, 459 F.3d at 132.

The First Circuit held that statutory silence in VARA and its legislative history, combined with the competing interests peculiar to site-specific works and potential interference with landowners' rights freely to deal with their property, confirmed its conclusion that VARA did not apply to site-specific works at all:

> . . . Phillips is arguing that VARA's silence on a subject is actually evidence that the statute

[11]

addresses that subject. To say the least, this is an
odd way to read a statute. If VARA actually
established such a complicated, dual regime, we would
expect that the phrase "site-specific", or some
equivalent, would appear in the language of the
statute. There is no such phrase anywhere. Indeed,
we would expect much more than just a reference to
site-specific art. We would expect an elaboration of
how to differentiate between site-specific and non-
site-specific art (plop-art). That elaboration is
nowhere to be found.
　　Moreover, the creation of a dual regime -- which
would require us, essentially, to rewrite VARA -- has
potentially far-reaching effects beyond the protection
of Phillips' work in the Park. Once a piece of art is
considered site-specific, and protected by VARA, such
objects could not be altered by the property owner
absent consent of the artist. Such a conclusion could
dramatically affect real property interests and laws.
　　For example, as Pembroke argues in its brief,
Phillips' work in the Park "lies within a rapidly
changing urban area and extends beyond Eastport Park
to Boston Harbor." If a dual regime were created,
there is the potential that: not only would Pembroke's
ability to move [Phillips'] work or alter Eastport
Park be subject to Phillips' approval, but also the
owners of nearby property who had nothing to do with
the purchase or installation of Phillips' works would
be subject to claims that what they do with <u>their</u>
property has somehow affected the site and has, as a
result, altered or destroyed Phillips' works. . . .
VARA does not apply to site-specific art at all.

<u>Phillips</u>, 459 F.3d at 142-43 (alteration and emphasis in original).

The Hotel argues that the <u>Phillips</u> Court's reasoning applies equally in this action. First, the PRMRA does not address "site-specific" works at all. Mot. Dismiss 13. Second, the PRMRA was drafted five years after <u>Phillips</u> was decided, and under <u>Cannon</u> v. <u>University of Chicago</u>, 441 U.S. 677, 696-99

[12]

(1979), the Hotel argues it ought be presumed that legislators "know the law as well as judicial decisions construing comparable statu[t]es." Mot. Dismiss 13-14.

Urbain agrees that the Court should assume the Legislative Assembly of Puerto Rico was aware of <u>Phillips</u>, but urges that the act's legislative history indicates the Legislative Assembly intended to expand the rights beyond those articulated in VARA, thus implicitly expanding the statute's reach (without saying so) to site-specific works. Opp'n Mot. 10-12.

The Statement of Motives undergirding the PRMRA provides in pertinent part:

> On December 1, 1990, after the United States became a signatory of the Berne Convention, Congress approved the "Visual Artists Rights Act." Said statute embraces the basic civilist principle that the moral rights of an author must be protected. Said federal legislation applies only to works that have less than two hundred (200) copies. We must clarify the federal legislation is not preemptive, thus allowing states, and in this case, Puerto Rico, to legislate in favor of the moral rights of authors whenever the federal statute does not protect the same. As a matter of fact, states such as New York and California have approved legislation related to authors' moral rights.
> The main objectives of this measure are: 1) to achieve greater certainty and clarify some aspects about how moral rights are applicable; 2) minimize possible clashes with the statutory scheme of the Copyright Act; 3) temper our protections with the realities of the digital age so as not to hinder the Island's economic, educational, cultural, and creative development.
> Our artists play an important role in capturing the essence of our culture and preserving it for future generations to appreciate. There is an

> interest to clearly define the rights of artists, both
> for their sake and that of the public in general.
> Access to artistic works must be a priority for a
> society. Moreover, we must emphasize that such rights
> belong to the authors and the State must facilitate
> whatever it is that the former wishes to do with its
> creations, rather than limiting their abilities. The
> State must refocus its efforts towards that which
> supports fostering the arts, making the flow of works
> more flexible, and safekeeping the balance between
> society's access to a work and the control of such
> work by he who creates it.

Statement of Motives of Act No. 55 of 2012 at 3-4, Oficina de Servicios Legislativos, www.oslpr.org/download/en/2012/A-0055-2012.pdf (last visited May 9, 2019)("Statement of Motives").[6] Urbain also cites to a Seventh Circuit decision criticizing the First Circuit's interpretation that the VARA does not apply to site-specific art. Kelly v. Chicago Park Dist., 635 F.3d 290, 306 (7th Cir. 2011) ("question[ing] [the First Circuit's] interpretation of VARA").

The Hotel responds that Legislative history reinforces its interpretation of the PRMRA:

> It defies credulity to argue that the Legislative
> Assembly, aware of the fact that courts within this

---

[6] Urbain cites to another document, Informe Positivo sobre el P. del S. 2263, Puerto Rico Senate, November 8, 2011, p. 14. "This document is not available in English and [Urbain] failed to provide a certified translation as required under applicable law." Reply Opp'n. 9 (citing 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language.")). The Court therefore does not consider it. See González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) ("The district court should not have considered any documents before it that were in the Spanish language.").

> Circuit had forewarned that statutes that do not
> mention the concept of site-specific work should not
> be read as trumping the rights of real property,
> nonetheless chose to protect such works without making
> a single reference to them in the PRMRA or the
> statute's legislative history.

Reply Opp'n 10. In response, Urbain changes tack, requesting certification of the issue to the Puerto Rico Supreme Court in light of the parties' "drastically opposing interpretations" of the PRMRA. Sur-reply 4. At the hearing, this request was denied.

The Hotel has the better of it. The PRMRA suffers from the same issue as VARA: it does not mention site-specific works.

The legislative history of the PRMRA acknowledges differences between United States law under the Copyright Act, including VARA, and the roots of Puerto Rico's moral rights law in the Spanish Intellectual Property Law of 1879. Statement of Motives 3. The Court recognizes this distinction and the Legislative Assembly's expressed intent that the PRMRA complement federal law. Statement of Motives 4. The Court is persuaded, however, that if the Puerto Rico Legislative Assembly was aware of the thorny property issues that arise in site-specific works -- and Court assumes that it was -- it would have addressed the issue explicitly had it intended the PRMRA to cover site specific-works. Where there is no mention of site-specific works of art, and our Circuit is one of the few

Circuits by analogy to have dealt with the issue head-on, it would appear the absence of any mention of site-specific art excludes site-specific art from the PRMRA. If protection of site-specific art is necessary under the PRMRA, the Legislative Assembly of Puerto Rico can amend the statutory scheme. See Phillips, 459 F.3d at 143 ("[T]he plain language of VARA does not protect site-specific art. If such protection is necessary, Congress should do the job.").

Since this Court rules that the PRMRA does not apply to the site-specific work at issue here, the Court need not, and does not, address the legal issue of whether federal law preempts the PRMRA.

### III. CONCLUSION

The motion to dismiss the amended complaint is DENIED as to the copyright claim (Count I) and ALLOWED as to the PRMRA claim (Count III).[7]

**SO ORDERED.**

*William G. Young*
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[7] Count II seeks injunctive relief apparently for the alleged copyright violations in Count I and survives only to that extent.